## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| CAMERON INTERNATIONAL CORPORATION, | § § § | |
| | § | CIVIL ACTION NO. 6:20-cv-00125-ADA |
| *Plaintiff*, | § § | |
| vs. | § § | |
| NITRO FLUIDS LLC, | § § | |
| *Defendant*. | § § § | |

## DEFENDANT NITRO FLUIDS, L.L.C.'S
## OPPOSED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    APPLICABLE LAW ........................................................................................... 2

III.   STATEMENT OF RELEVANT FACTS ............................................................ 4

    A.   Nitro Fluids, L.L.C. ..................................................................................... 4

    B.   Cameron International Corp........................................................................ 5

    C.   The Houston Action ..................................................................................... 6

    D.   The Waco Action .......................................................................................... 7

IV.    HOUSTON IS "CLEARLY THE MORE CONVENIENT" VENUE ................. 7

    A.   This Action could have been Brought in Houston ....................................... 8

    B.   The Private Interest Factors Favor Transfer.............................................. 9

       1.   As compared to Waco, Houston offers much easier access to sources of proof. ............ 9

       2.   Transfer to the Houston Division would significantly reduce the cost and inconvenience of attendance for all witnesses................................................................... 10

       3.   Transfer to the Houston Division would reduce "other practical problems that make trial of a case easy, expeditious and inexpensive."............................................. 13

    C.   The Public has a Strong Interest in Transferring to Houston.............................................. 14

       1.   Houston has a much greater local interest in this case than Waco ............................... 14

       2.   The availability of compulsory process slightly favors transfer.................................... 15

       3.   The administrative difficulties flowing from court congestion. .................................... 15

       4.   The familiarity of the forum with the law that will govern the case and avoidance of unnecessary conflicts of law problems. ........................................................................ 15

V.     CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Action Indus., Inc. v. U.S. Fid & Guar. Co.*, 358 F.3d 337 (5th Cir. 2004) ........................................ 2

*Cadle Co. v. Keyser*, No. A-14-CV-758 LY, 2015 U.S. Dist. LEXIS 20909, 2015 WL 764256 (W.D. Tex. Feb. 23, 2015), *report and recommendation adopted*, No. 1:14-CV-758-LY, 2015 U.S. Dist. LEXIS 182432 (W.D. Tex. Mar. 19, 2015) .................................................................................. 8

*Carruth v. Michot*, No. A-15-CA-00189-SS, 2015 U.S. Dist. LEXIS 145224, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015)............................................................................................................ 15

*Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392 (S.D. Tex. 1992) ...................... 11

*Data Scape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129-ADA, 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ...................................................................... passim

*Freshub, Inc. v. Amazon.com Inc.*, W-19-CV-00388-ADA, D.I. 29 (W.D. Tex. Sept. 9, 2019) ......... 9

*In re Radmax*, *Ltd.*, 720 F.3d 285 (Fed. Cir. 2013)........................................................................ 7, 9

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)........................................................ 2, 8

*McCloud v. McClinton Energy Grp., L.L.C.*, No. 5:14-CV-620-XR, 2014 U.S. Dist. LEXIS 160080, 2014 WL 6388417 (W.D. Tex. Nov. 14, 2014)............................................................................ 10

*Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759 (S.D. Tex. 2009) .......... 10

*Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 U.S. Dist. LEXIS 191022, 2014 WL 12479284 (W.D. Tex. Aug. 11, 2014) ...................................................... 3, 14

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ...................................................................... 2

*Van Dusen v. Barrack*, 376 U.S. 612 (1964)...................................................................................... 2

*VLSI Tech. LLC v. Intel Corp.*, 6:19-CV-000254-ADA, 2019 U.S. Dist. LEXIS 155287, 2019 WL 4254065 (W.D. Tex. Aug. 6, 2019) ................................................................... 1, 3, 13

*VLSI Tech. LLC, v. Intel Corp.*, No. 6:19-CV-00254-ADA (Lead Case), 2019 U.S. Dist. LEXIS 227809, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) ................................................... 2, 3, 9, 10

**Statutes**

28 U.S.C. § 1404(a)................................................................................................................. 2, 7, 10

**EXHIBIT LIST**

| No. | Description |
|-----|-------------|
| 1 | LinkedIn Profile of Cameron, *available at* https://www.linkedin.com/company/cameron/people/?facetGeoRegion=us%3A42 (last accessed March 24, 2020) |
| 2 | LinkedIn Profile of Kirk Guidry, *available at* https://www.linkedin.com/in/kirk-guidry-2a845888/ (last accessed March 11, 2020) |
| 3 | LinkedIn Profile of Greg Conrad, *available at* https://www.linkedin.com/in/greg-conrad-4541686/ (last accessed March 11, 2020) |
| 4 | Cameron's Rule 26 Initial Disclosures in *Cameron International Corp. v. Nitro Fluids, L.L.C.*, No. 4:18-cv-02533 (S.D. Tex. 2018) |
| 5 | Cameron's Original Complaint for Infringement (Dkt. 1) filed July 20, 2018 in *Cameron International Corp. v. Nitro Fluids, L.L.C.*, No. 4:18-cv-02533 (S.D. Tex. 2018) |
| 6 | Cameron's First Amended Complaint for Infringement (Dkt. 11) filed September 7, 2018 in *Cameron International Corp. v. Nitro Fluids, L.L.C.*, No. 4:18-cv-02533 (S.D. Tex. 2018) |
| 7 | Cameron's Second Amended Complaint for Infringement (Dkt. 50) filed March 8, 2019 in *Cameron International Corp. v. Nitro Fluids, L.L.C.*, No. 4:18-cv-02533 (S.D. Tex. 2018) |
| 8 | U.S. Patent No. 9,068,450 ("the '450 Patent") |
| 9 | U.S. Patent No. 9,518,430 ("the '430 Patent") |
| 10 | U.S. Patent No. 9,932,800 ("the '800 Patent") |
| 11 | U.S. Patent No. 10,094,195 ("the '195 Patent") |
| 12 | U.S. Patent No. 9,903,190 ("the '190 Patent") |
| 13 | Joint Stipulation of Dismissal (Dkt. 37) filed December 7, 2018 in *Cameron International Corp. v. Nitro Fluids, L.L.C.*, No. 4:18-cv-02533 (S.D. Tex. 2018) |
| 14 | Nitro's Motion for Rule 11 Sanctions (Dkt. 78) filed May 30, 2019 in *Cameron International Corp. v. Nitro Fluids, L.L.C.*, No. 4:18-cv-02533 (S.D. Tex. 2018) |
| 15 | Transcript of August 22, 2018 Hearing in *Cameron International Corp. v. Nitro Fluids, L.L.C.*, No. 4:18-cv-02533 (S.D. Tex. 2018) |

| 16 | Various Google Map Distances |
|---|---|
| 17 | Various Google Flight Schedules |
| 18 | Travelocity Waco Hotel Price List |
| 19 | Travelocity Houston Hotel Price List |
| 20 | Eubanks, PLLC, "Contact" page, *available at* www.eubanksip.com/contact.php (last accessed March 24, 2020) |
| 21 | LinkedIn Profile of Eddie Ganzinotti, *available at* https://www.linkedin.com/in/eddie-ganzinotti-5a6a4b70/ (last accessed March 24, 2020) |
| 22 | United States Courts, "Federal Court Management Statistics – Comparison within Circuit," *available at* https://www.uscourts.gov/file/27877/download (last accessed March 24, 2020) |

## I.      INTRODUCTION

Subject to its Motion to Dismiss (Dkt. 16), Nitro Fluids, L.L.C. ("Nitro") respectfully requests that the Court transfer this case to the Houston Division under 28 U.S.C. § 1404(a)—the same venue that Cameron International Corp. ("Cameron") itself determined was the best forum to litigate a co-pending action accusing the same Nitro system of infringement based on related patents ("Houston Action"). *See VLSI Tech. LLC v. Intel Corp.*, 6:19-CV-000254-ADA, 2019 U.S. Dist. LEXIS 155287, 2019 WL 4254065, at *27 (W.D. Tex. Aug. 6, 2019) (Albright, J.) ("It would be malpractice for its legal counsel to have done less than to advise its client to file in the venue that was most favorable under what factors it is evaluating."). Cameron's decision to initiate the parties' larger dispute in Houston made perfect sense given that:

- Nitro "resides" in the Southern District of Texas by virtue of its headquarters in Nordheim, Texas, and all of Nitro's sources of proof and relevant witnesses are at its headquarters;

- Cameron and the key named inventor reside in Houston, meaning all Cameron witnesses and evidence are very easily accessible;

- Cameron is a local company employing thousands of Houstonians (including all relevant Cameron witnesses), meaning Houston has a strong local interest in the alleged infringement; and

- Virtually all of Nitro's (and presumably Cameron's) customers are based out of Houston, making it a convenient forum for third-party witnesses.

Despite the indisputable and overwhelming connection to Houston, Cameron inexplicably filed this lawsuit in Waco ("Waco Action"), which asserts two patents by the *same* inventors as the Houston patents against the *exact same* accused system from the Houston Action. Cameron's decision to file a near identical lawsuit in Waco is particularly baffling because, unlike Houston, Waco has *no*

connection whatsoever to the parties, the evidence, or any third parties.[1] *See VLSI Tech. LLC, v. Intel Corp.*, No. 6:19-CV-00254-ADA (Lead Case), 2019 U.S. Dist. LEXIS 227809, 2019 WL 8013949, at *6 (W.D. Tex. Oct. 7, 2019) (transferring from Waco to Austin where "neither party has a facility or a relevant employee in Waco," "[n]one of the inventors … live in Waco," "[n]one of the inventions at issue were made in Waco," and "[n]either party identifies any relevant third parties … in Waco.").

Application of the § 1404(a) factors confirms the commonsense conclusion that Houston is not only more convenient than Waco, it is *extraordinarily* more convenient. Of the eight factors considered, five favor transfer and three are neutral. This glaring imbalance calls into question the motive behind Cameron's decision to file in Waco—a decision that is contrary to Cameron's own decision to enforce virtually identical, related patents in Houston against the same accused system.[2]

## II.    APPLICABLE LAW

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The moving party carries the burden of showing transfer is appropriate. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Id.* at 312. If this requirement is met, "[t]he determination of 'convenience'

---

[1] While Cameron cherry-picked alleged infringing activity in Pecos and Monahans, Texas to justify venue in the Western District, both locations are over *five hundred miles* from Waco (much closer to Midland) and do not house relevant evidence, which is instead housed at Nitro's headquarters Nordheim.

[2] Cameron's motive deserves scrutiny given that (1) the Houston court has already chastised Cameron for "making things difficult" by asserting frivolous patents and rejected Cameron's proffered excuses for its conduct as "no defense," and (2) Cameron's counsel in the Houston Action later approached the undersigned about transferring the case for the explicit purpose of escaping the presiding judge.

turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

> Private Factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 315.

> Public Factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

"A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue." *VLSI Tech.*, 2019 U.S. Dist. LEXIS 155287, 2019 WL 4254065, at *12 (citing *Volkswagen*, 545 F.3d at 315 n.10, 315). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* (quoting *In re Volkswagen*, 545 F.3d at 315).

Ultimately, where an action could have been brought in the transferee division and the transferee venue is "clearly more convenient," a motion to transfer to another division should be granted. *Data Scape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129-ADA, 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) (Albright, J.). This is true regardless of whether the transfer is a shorter or longer distance. *See id.* at *1-4 (relying on Fifth Circuit precedent analyzing "a transfer from Marshall to Tyler—two cities even closer to each other than Austin is to Waco" and transferring patent case from Waco to Austin where four factors favored transfer and four were neutral); *Intel*, 2019 U.S. Dist. LEXIS 227809, 2019 WL 8013949, at *17 (transferring from Waco to Austin where three factors favored transfer, one factor was against, and the remaining were neutral); *Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 U.S. Dist. LEXIS 191022, 2014 WL 12479284, at *7-8 (W.D. Tex. Aug. 11, 2014) (transferring patent case from Austin to San Antonio where four factors favored transfer and four were arguably neutral).

### III.    STATEMENT OF RELEVANT FACTS

#### A.  Nitro Fluids, L.L.C.

Nitro is an oilfield equipment and supply company that provides the high-pressure fracturing piping systems accused of infringement by Cameron. Declaration of Wesley Clayton ("Clayton Decl.") ¶ 5. An example of one such system is illustrated right, which involves a series of larger high-pressure fluid conduits, valves and connection blocks for delivering fracturing fluid (blue) to a wellhead. *Id.* For any given job, Nitro procures, delivers, and physically sets up the equipment at a customer's well site. *Id.*



Nitro's principal place of business and headquarters is located in Nordheim, Texas,[3] where over 40 people are employed. *Id.* ¶ 6. All technical documents (e.g., engineering drawings) and financial documents (e.g., revenue and costs documents) relating to Nitro's fracturing systems are housed at the Nordheim office. *Id.* ¶¶ 7-8. The Nitro employees most knowledgeable about the financial and technical aspects of these fracturing systems work from the Nordheim office on a daily basis, except to the extent they occasionally travel to meet customers or visit well sites. *Id.* ¶ 9.

Virtually all of Nitro's customers are based out of Houston, including but not limited to ConocoPhillips Co. and Oxy USA, Inc., which Cameron has identified by name in its complaint. *Id.* ¶ 10; Dkt. 1 ¶ 15. When it comes to securing a job from a customer or supply chain procurement for a customer, Nitro deals almost exclusively with customer employees at the customers' corporate offices in Houston, TX. Clayton Decl. ¶ 11. When technical drawings are prepared by Nitro, they are typically sent to customer employees or representatives in Houston for approval or modification, even if the

---

[3] Nordheim is 160 miles from Houston and 213 miles from Waco. Ex. 16 at 1-2.

4

well site is located hundreds of miles away in west Texas (e.g., Odessa). *Id.* ¶ 12. Nitro visits Houston so frequently that it has a permanent apartment in Houston for Nitro employees to stay. *Id.* ¶ 13.

When Nitro is preparing for any given job, all equipment for the job is first procured by Nitro and delivered to the Nordheim Office, where it is inspected and packaged with all other equipment designated for a particular well site in preparation for delivery. *Id.* ¶ 14. If the customer well is within a certain geographic distance of Nordheim, the equipment is delivered directly to that well site. *Id.* If a customer well is beyond a certain geographic distance, for example hundreds of miles away in Odessa, then the equipment is typically sent to Nitro's small office and equipment yard in Monahans, Texas,[4] where it is received by Nitro employees prior to delivery to the customer well site. *Id.* ¶ 15. Once a job is complete, the equipment is always sent back to Nordheim for inspection, maintenance, and re-use. *Id.* ¶ 16. Technical and financial documents are not maintained or housed at the Monahans location. *Id.* ¶ 15. Only lower-level Nitro employees are employed at the Monahans location. *Id.* ¶ 17.

Nitro has no connection to Waco or any area around Waco. *Id.* ¶ 19. Nitro has never performed oil and gas work for customers in or around Waco. *Id.* ¶ 20. Nitro has no accused systems or structures in or around Waco. *Id.* ¶ 21. Nitro has no offices in or around Waco. *Id.* ¶ 22. Nitro has no real estate holdings in or around Waco. *Id.* ¶ 23. Nitro does not pay any real estate or other municipal taxes in the Waco area. *Id.* ¶ 24. Nitro does not maintain or store any documents or information in or around Waco. *Id.* ¶ 25. Nitro has no employees in or around Waco and Nitro employees have not performed any work in or around Waco. *Id.* ¶ 26. Nitro is unaware of any customers' well sites in or around Waco. *Id.* ¶ 27.

### B.  Cameron International Corp.

Cameron is a Houston based U.S. subsidiary of Schlumberger Limited, a large international oil and gas company. Cameron has a principal place of business at 3505 West Sam Houston Parkway

---

[4] Monahans is 35 miles from Odessa and 390 miles from Waco. Ex. 16 at 3-4.

North, Houston, Texas. Dkt. 1 ¶ 1. Cameron employs over 2,500 Houstonians. Ex. 1. These Houstonians include (1) Kirk Guidry, Cameron's Vice President of Engineering and the sole named inventor on most of the asserted patents (including the '132 Patent in this Action), and (2) Eddie Ganzinotti, the Vice President of North American Sales and Operations. Ex. 2; Ex. 21. These are the only employees Cameron identified as having relevant knowledge in the Houston Action. Ex. 4 at 3.

### C. The Houston Action

In July 2018, Cameron sued Nitro in the Houston Division for alleged patent infringement against the same Nitro fracturing system accused of infringement in the Waco Action. Cameron initially asserted U.S. Patents 9,068,450 ("the '450 patent") and 9,518,430 ("the '430 patent"). Ex. 5. Over time U.S. Patents 9,903,190 ("the '190 Patent"), 9,932,800 ("the '800 Patent"), and 10,094,195 ("the '195 Patent") were added via two amendments. Exs. 6, 7. Mr. Guidry is the sole named inventor on the '450 (Ex. 8), '430 (Ex. 9), '800 (Ex. 10), and '195 Patents (Ex. 11), while Gregory Conrad is named inventor on the '190 Patent (Ex. 12).

Cameron voluntarily dismissed (with prejudice) its claims for infringement of the '450 and '430 Patents after a court ordered inspection. Ex. 13. Nitro then filed a Motion for Rule 11 Sanctions because (i) Cameron should have known those patents could not be infringed based on photos relied on by Cameron in its complaint and (ii) Cameron rejected Nitro's pre-suit offer to inspect the accused system and instead initiated an unfounded patent suit. Ex. 14 at 2. Though the motion was denied, at the sanctions hearing the judge made clear that "Cameron and its parent [Schlumberger] is not helping themselves by being difficult" and that the excuses offered by Cameron for its conduct were "not a defense." Ex. 15 at 60:1-16. After the hearing, Cameron's litigation counsel in the Houston Action approached the undersigned requesting that the case be transferred because of dissatisfaction with the judge. The undersigned informed Cameron's counsel that it had no intention of agreeing to

transfer. The counts as to the '190, '800 and '195 Patents (collectively "Houston Asserted Patents") are still pending. Ex. 7. Cameron alleges those patents cover its commercial Monoline™ system. *Id.* ¶¶ 2, 5-7.

**D. The Waco Action**

Cameron filed this Action accusing Nitro of infringing two additional related patents, U.S. Patent 10,385,645 ("the '645 Patent") and 9,915,132 ("the '132 Patent") (collectively "Waco Patents"), based on the same accused system in the Houston Action. Dkt. 1 ¶ 14.[5] While the same system has been accused, the allegations in the complaint cherry-pick activity in Pecos, Texas (430 miles from Waco) and a small Nitro staging yard in Monahans, Texas (400 miles from Waco). *Id.* ¶¶ 5, 14-15.

The '645 Patent issued in August 2019 and, as with the '195 and '800 Patents, names Mr. Guidry as the sole inventor. Dkt. 1-2. In fact, the '645 Patent is an indirect continuation of the '195 Patent asserted in the Houston action. *Id.* ("Related U.S. Application Data" listing '195 Patent). This means the '645 Patent contains the exact same subject matter and figures as the '195 Patent. *Compare generally id. with* Ex. 11. While the '132 Patent is in a different family than the Houston Asserted Patents, it has the same inventor (Mr. Conrad) as the '190 Patent and is directed towards the same technology and accused system, *i.e.*, fracturing systems with manifolds and trees connected via connection blocks and flanged piping. *Compare* Dkt. 1-1 (abstract) *and* Ex. 12 (abstract).

**IV. HOUSTON IS "CLEARLY THE MORE CONVENIENT" VENUE**

Courts consider eight factors under § 1404(a). *Volkswagen*, 545 F.3d at 315. At least five factors favor transferring this action to the Houston Division, and the other three are neutral. No factor favors maintaining the case in the Waco Division. The large imbalance should not be surprising because, unlike Houston, Waco has no connection whatsoever to the facts or evidence underlying this

---

[5] The photo in the Waco Complaint is an aerial view of the same Nitro system depicted and accused of infringement in the various Houston Complaints. *See e.g.*, Ex. 7 ¶¶ 15, 20, 25.

Action. As such, transfer to Houston is appropriate. *See In re Radmax*, *Ltd.*, 720 F.3d 285, 290 (Fed. Cir. 2013) (finding "extraordinary error" by district court in denying transfer where three of eight factors favored transfer, others were neutral, and no factor favored plaintiff's chosen division, which the "case has no connection to"); *see also Cadle Co. v. Keyser*, No. A-14-CV-758 LY, 2015 U.S. Dist. LEXIS 20909, 2015 WL 764256, at *3 (W.D. Tex. Feb. 23, 2015), *report and recommendation adopted*, No. 1:14-CV-758-LY, 2015 U.S. Dist. LEXIS 182432 (W.D. Tex. Mar. 19, 2015) (transferring from Austin to San Antonio "because this case bears absolutely no connection to the Austin Division" and there was not "anything about trying the case in Austin that would make it easy, expeditious or inexpensive"); *Datascape*, 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069, at *4 (transferring where "Plaintiff proffers neither facts nor arguments sufficient to demonstrate why this case should remain in Waco. Most—if not all—of the relevant connections in this case are to Austin rather than to Waco").

### A. This Action could have been Brought in Houston

The first question is whether a civil action "might have been brought" in the destination venue, which in this case is Houston. *In re Volkswagen*, 545 F.3d at 312. Cameron clearly could have brought this action in Houston by expediently amending its current complaint in Houston[6] or filing a new complaint. Cameron has already sued Nitro in Houston, accusing the exact same fracturing system and activity of infringement based on related patents. Further, Nitro maintains its principal place of business in Nordheim, Texas, a fact that Cameron relied on as the basis for venue in the Houston Action against the same fracturing system. Ex. 5 ¶ 11; Ex. 6 ¶ 13; Ex. 7 ¶ 12. The next question is whether Houston is "clearly more convenient" than Waco.

---

[6] Cameron has already amended its complaint in the Houston Action twice—first to add the '800 and '190 Patents and then again to add the '195 Patent. Had Cameron asked, Nitro would have readily agreed to a further amendment if for no other reason than to avoid the cost of litigating on two fronts and wasting two separate courts' finite resources.

**B.  The Private Interest Factors Favor Transfer**

    **1.  As compared to Waco, Houston offers much easier access to sources of proof.**

A court looks to where physical evidence, such as documents, is stored when considering the first private interest factor. *Volkswagen*, 545 F.3d at 316. Under this factor, "the question is *relative* ease of access, not absolute ease of access." *Datascape,* 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069, at *5 (quoting *Radmax*, 720 F.3d at 288) (emphasis added). Given that all relevant documents and physical evidence are located much closer to Houston, this factor heavily favors transfer.

First, all relevant technical, financial and marketing evidence for the accused systems are maintained and housed at Nitro's headquarters in Nordheim. Clayton Decl. ¶¶ 7-8. Nordheim is in the Southern District of Texas and is 53 miles closer to Houston than Waco. Ex. 16 at 1, 2; *see Data Scape,* 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069, at *5 (granting motion to transfer to Austin after finding "access to sources of proof is *relatively* easier in Austin than it is in Waco") (emphasis in original); *see also Intel*, 2019 U.S. Dist. LEXIS 227809, 2019 WL 8013949, at *9 (finding relative ease of access favored transfer to Austin from Waco where accused infringer's evidence was closer to Austin); *Freshub, Inc. v. Amazon.com Inc.*, W-19-CV-00388-ADA, D.I. 29 at 3 (W.D. Tex. Sept. 9, 2019) (Albright, J.) (explaining that "even 80 or 90 miles is inconvenient."). Further, Nitro will already have produced the same evidence in the Houston Action given that the same accused system is at issue. Thus, the ease of access in Houston regarding Nitro evidence is considerably greater.

Second, most if not all of Cameron's relevant evidence is in Houston. Cameron has a principal place of business in Houston, mere miles from the federal courthouse. Dkt. 1 ¶ 1. Cameron purportedly "engineers, designs and manufactures flow and pressure control technologies" in Houston. *Id.* The invention disclosure forms produced in the Houston Action were sent to Cameron's offices in Houston, and the sole named inventor on most of the asserted patents in both Actions, Mr. Guidry, lives in Cypress, Texas, a suburb on the outskirts of Houston. Ex. 2; Ex. 4 at 3. The *only* employees Cameron

identified in its initial disclosures reside in the Houston area and Cameron admits they have information on the design, sales and marketing of the allegedly patented Monoline™ systems, as well as competition with Nitro. Ex. 4 at 3. Thus, Cameron's relevant documents are all a few miles from the federal courthouse in Houston. This same evidence is almost 200 miles from Waco. Ex. 16 at 5.

Third, most third-party evidence is housed in Houston, because virtually all Nitro customers for the accused products are based in Houston. Clayton Decl. ¶ 10. This includes the customers that Cameron has identified in the various complaints filed in both Actions, such as Occidental Petroleum Corporation and ConocoPhillips. Dkt. 1 ¶ 15; Ex. 7 ¶¶ 16-17, 21-22, 25-26. Nitro deals directly with customer representatives in Houston regarding the design of the accused fracturing systems and purchasing. Clayton Decl. ¶¶ 11-12. Thus, evidence maintained by these customers is in Houston.

Fourth, there is no connection between any source of proof and the Waco Division or area. Nitro does not maintain an office in or around the Waco area, and Nitro is unaware of Cameron or any relevant non-party having any connection to the Waco area. *See McCloud v. McClinton Energy Grp., L.L.C.*, No. 5:14-CV-620-XR, 2014 U.S. Dist. LEXIS 160080, 2014 WL 6388417, at *9 (W.D. Tex. Nov. 14, 2014) (finding this factor favored transfer where plaintiffs could "point to no evidence" located within transferor division); *Data Scape,* 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069, at *4 (granting transfer motion as "Plaintiff failed to proffer or identify any such sources in Waco.").

### 2. Transfer to the Houston Division would significantly reduce the cost and inconvenience of attendance for all witnesses.

"The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a)." *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009) (Atlas, J.). This factor weighs heavily in favor of transfer, as it is much more convenient for all witnesses (both key and non-key witnesses) to attend trial in Houston.

First, Houston is much more convenient for the named inventors of the Waco Patents, both of

whom are key witnesses. See *Intel*, 2019 U.S. Dist. LEXIS 227809, 2019 WL 8013949, at *13 ("Because inventors' testimony is extremely important, inventors are key witnesses and the Court gives greater weight to their convenience.") (citing *Mid-Continent*, 629 F. Supp. 2d at 762). Mr. Guidry, a Cameron witness, lives in Cypress, Texas, which is about 28 miles from Houston and 160 miles from Waco. Ex. 16 at 7-8. Thus, Mr. Guidry would not incur hotel or travel expenses if trial is held in Houston. In stark contrast, he would incur considerable expenses to travel 320 miles round-trip to Waco and stay in a hotel, as well as any additional lost-work time due to the required travel. Mr. Conrad (a non-party witness)[7] lives in Calgary, Canada. Ex. 3; Ex. 4 at 3. While Calgary is closer to Waco than Houston, it is more inconvenient and costly to travel between Calgary and Waco. For one, there are no direct flights between Calgary and Waco, while there are several direct flights a day between Calgary and Houston. Ex. 17. Moreover, the duration of flights between Calgary and Waco are much longer than flights between Calgary and Houston, there are far fewer flight times to choose for Waco, and the Waco flights are more expensive than even the non-stop Houston flights. *Id.* Hotel price differences are negligible. *Compare* Ex. 18 *with* Ex. 19. Thus, trial in Houston would be more convenient and inexpensive for both inventors. *Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992) (explaining that "the convenience of one key witness may outweigh the convenience of numerous less important witnesses").

Second, trial in Houston for the prosecuting attorney of both asserted patents, Lee Eubanks (a non-party witness), is much more convenient. Mr. Eubanks lives in the Houston area and works in Houston, and so attending trial there would be more convenient for the same reasons as for Mr. Guidry. Ex. 4 at 3; Ex. 20. He is a key witness given that he drafted and prosecuted all of the patents at issue, and he has knowledge of the prior art, conception, reduction to practice and potential inequitable

---

[7] Mr. Conrad's LinkedIn page reflects that he is retired. Ex. 3.

conduct. Dkt. 1-1 (listing Eubanks PLLC as firm of record on face of patent); Dkt. 1-2 (same).

Third, nearly all Nitro customers reside in or around Houston. The customers are key witnesses because they can provide testimony relating to alleged lost profits and damages generally, including whether they would have used Cameron's allegedly patented system had Nitro's system not existed. It would be much more inconvenient for Nitro's customers to travel to Waco for trial when most—if not all—of their relevant witnesses and documents reside in or around Houston. These non-parties would incur the same inconvenience and additional costs as Messrs. Guidry and Eubanks above.

Fourth, all of Cameron's identified witnesses are in Houston, including Mr. Guidry and Mr. Ganzinotti. Ex. 4 at 3. Messrs. Guidry and Ganzinotti are undoubtedly key witnesses for Cameron, because they are the only Cameron employees identified in Cameron's initial disclosures in the Houston Action and they have knowledge of "design, operation, sales and marketing of relevant Cameron products" and "competition with Nitro Fluids." *Id.*

Fifth, attendance in Houston would be much more convenient for all Nitro witnesses. Messrs. Koricanek, Harper, Simpson Jr., Medellin, and Clayton are the most knowledgeable employees regarding the technical, sales and marketing aspects of the accused systems. Clayton Decl. ¶ 9. These employees live near, and work from, Nordheim on a daily basis. *Id.* Given that there is no airport near Nordheim, they would be required to drive to Waco or Houston. However, Houston is more convenient because the roundtrip between Nordheim and Houston is 100-miles less than the round trip between Nordheim and Waco. Ex. 16 at 1-2. Moreover, Nitro would not incur hotel expenses because Nitro has a permanent apartment in Houston for business visits to Houston customers. Clayton Decl. ¶ 13. Thus, it is both more convenient and less expensive for Nitro to travel and stay in Houston for trial.

In view of the above, trial in Waco as opposed to Houston would impose an unnecessary and considerable travel burden for all relevant witnesses. Thus, this factor heavily favors transfer. *See*

*Datascape*, 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069, at *5 (finding this factor supported transfer from Waco to Austin where plaintiff "identified no such witnesses" that reside in Waco).

### 3. Transfer to the Houston Division would reduce "other practical problems that make trial of a case easy, expeditious and inexpensive."

Trying this case in Houston would be more efficient, easier, and more inexpensive because of the co-pending Houston Action. Both lawsuits accuse the same Nitro piping system of infringement and involve *identical* parties, *identical* inventors, *identical* third-parties (e.g., customers and prosecution counsel) and *identical* patent technologies, as well as related patents with substantially similar specifications and claims. The court in the Houston Action is already familiar with the patented technology and accused products, and in fact has already held a *Markman* hearing on the '195 Patent, which the '645 Patent (asserted in this Action) is an indirect continuation of. There would be considerable efficiency for both the judicial system and all parties if this case were transferred.

Moreover, trying the case in Waco would create other practical difficulties that support transfer. For one, there is the obvious risk of inconsistent rulings (particularly as to claim construction given the substantial overlap in claim terminology), which is eliminated if the case is transferred. Second, as discussed above, trying the case in Waco wastes this Court's resources because overlapping issues in both cases will be, or already have been, addressed in the Houston Action.

Finally, transferring this case to Houston will deter future plaintiffs and Cameron from doing what Cameron has done here—*i.e.*, filing a second lawsuit in a venue that has no connection whatsoever to the parties, the evidence or the facts, despite a virtually identical substantive suit existing in an infinitely more convenient venue that ***the plaintiff itself selected***. *See VLSI Tech.*, 2019 U.S. Dist. LEXIS 155287, 2019 WL 4254065, at *27 ("It would be malpractice for its legal counsel to have done less than to advise its client to file in the venue that was most favorable under what factors it is evaluating."). While Nitro cannot read minds, it is difficult to conclude that Cameron filed suit in Waco

13

for any reason other than to escape the presiding judge in Houston, particularly given that Waco has no connection to the facts or evidence underlying this Action and that Cameron's counsel reached out to the undersigned to inquire about his interest in transferring the Houston case to another judge.

**C. The Public has a Strong Interest in Transferring to Houston**

    **1.  Houston has a much greater local interest in this case than Waco**

The "local interest factor, like all § 1404 factors, is concerned with the *relative* interests between the transferee and transferor forums." *Datascape,* 2019 U.S. Dist. LEXIS 154170, 2019 WL 4254069, at *8 (emphasis in original). Waco has no "local interest" in the underlying dispute. Neither Nitro nor Cameron resides in or around Waco. The accused systems are not designed, sold or used in or around Waco. Nitro is unaware of any relevant third-parties, including customers, that are in or around Waco. Nitro is not even aware of a well around Waco. Simply put, Waco has about as much interest in this lawsuit as the District of Alaska.

In stark contrast, the Houston division has an enormous interest in this case. A key inventor, Mr. Guidry, lives in the Houston area and is the sole named inventor on one of the two patents asserted in this lawsuit and two of the three patents asserted in the Houston Action, and he allegedly conceived of the inventions in the Houston area. Moreover, Cameron is a large Houston company with over 2,500 employees that work in the Houston area. Most of the relevant customers in this dispute are based in Houston. There is no question that Houston has a great local interest in resolving an infringement dispute involving patents that were (i) invented in Houston, (ii) owned by one of the largest employers in the Houston area, and (iii) allegedly infringed by activities at Houston customer's offices (sales, offers for sale) and at customer's well sites (use). Thus, this factor weighs heavily in favor of transfer. *See Mimedx*, 2014 U.S. Dist. LEXIS 191022, 2014 WL 12479284, at *7 ("The ultimate outcome of this suit likely affects local San Antonio interests more acutely than local Austin interests.").

### 2.   The availability of compulsory process slightly favors transfer.

This factor focuses on non-party witnesses. *See Carruth v. Michot*, No. A-15-CA-00189-SS, 2015 U.S. Dist. LEXIS 145224, 2015 WL 6506550, at *30 (W.D. Tex. Oct. 26, 2015) ("Because party witnesses do not typically require compulsory process, the Court focuses on non-party witnesses."). A vast majority of the non-party customers, as well as Mr. Eubanks, are not subject to this Court's compulsory process because they reside in the Houston area. First, because Houston is nearly 200 miles from Waco they cannot be compelled to appear at trial under Rule 45(c)(1)(A). Second, while they all are "employed, or regularly transacts business in person" in Texas under Rule 45(c)(1)(B)(ii), for the reasons discussed they would incur "substantial expense" as non-parties if they were forced to attend a trial nearly 200 miles away. Even if there was not a substantial expense, for these non-parties the expenses associated with a trial in Houston are considerably less than for a trial in Waco.[8]

### 3.   The administrative difficulties flowing from court congestion.

Federal Judicial Caseload Statistics show that, for the 12-month period preceding December 31, 2019, the Southern District of Texas median time-to-trial from filing for civil cases is 22.9 months versus 27.9 for this division. Ex. 22. However, under this Court's default schedule, it appears trial would occur sometime between 18 and 21 months after filing. Thus, this factor is essentially neutral.

### 4.   The familiarity of the forum with the law that will govern the case and avoidance of unnecessary conflicts of law problems.

Both this Court and the Houston Division are familiar with U.S. patent law, and there are no conflicts of law issues. Therefore, these factors are neutral.

## V.   CONCLUSION

For the reasons above, Nitro respectfully requests that the Court transfer this case to Houston.

---

[8] Compulsory attendance for Mr. Conrad, the non-party inventor of the '645 patent, may be unavailable because he lives in Calgary. However, he may be more willing to voluntarily testify at trial in Houston given that it is easier and less expensive to travel from Calgary to Houston.

April 24, 2020                                    Respectfully submitted,

                                                 /s/ *J. David Cabello*
                                                 J. David Cabello
                                                 *Attorney-in-Charge*
                                                 J. David Cabello
                                                 Texas Bar No. 03574500
                                                 James H. Hall
                                                 Texas Bar No.  24041040
                                                 Stephen D. Zinda
                                                 Texas Bar No. 24084147
                                                 CABELLO HALL ZINDA, PLLC
                                                 801 Travis Street, Suite 1610
                                                 Houston, TX 77002
                                                 Tel: 832-631-9990
                                                 Fax: 832-631-9991
                                                 Email: david@chzfirm.com
                                                 Email: james@chzfirm.com
                                                 Email: stephen@chzfirm.com

                                                 **Attorneys for Defendant Nitro Fluids, LLC**

## **CERTIFICATE OF CONFERENCE**

Pursuant to Rule CV-7(i) of the Local Court Rules, the undersigned certifies that it has conferred with opposing counsel in good-faith to resolve the matter above, including by providing the basis for the above-motion to opposing counsel in writing on April 22, 2020 and requesting a response as to whether opposing counsel would oppose the motion. Opposing counsel indicated that it opposed this motion, but did not provide a reason for the opposition.

 /s/ *David Cabello*
J. David Cabello

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 24th day of April 2020 a true and correct copy of the above motion was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

 /s/ *Stephen D. Zinda*
Stephen D. Zinda

17