IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **CAMERON INTERNATIONAL CORPORATION,** § § §<br>*Plaintiff*, § §<br>vs. § §<br>**NITRO FLUIDS LLC,** § §<br>*Defendant*. § § | **CIVIL ACTION NO. 6:20-cv-00125-ADA**<br><br>**JURY TRIAL REQUESTED** |

**DECLARATION OF WESLEY CLAYTON**

I, Wesley Clayton, declare and state as follows:

1. I am of legal age and competent to testify as to the matters set forth herein.

2. The facts set forth in this declaration are based on my own knowledge and on research by me and under my supervision and direction. If sworn as a witness to testify in this matter, I would testify to the facts as set forth in my declaration.

3. I am Operations Manager at Nitro Fluids, L.L.C. ("Nitro"). I have held this position for nearly a year. In this role, I am responsible for day-to-day operations, approving invoices, receipt of equipment, preparation of job bids, customer marketing, and procurement of mechanical drawings for each job. I have been employed by Nitro for over five years, first as an Assistant Pressure Control Manager, then District Manager and now Operations Manager.

4. I understand that Cameron International Corp. has accused Nitro of infringing multiple patents based on fracturing systems that Nitro designs and installs at various customer well sites.

5. Nitro is an oilfield equipment and supply company headquartered in Nordheim, Texas that provides, among other things, the high-pressure fracturing piping systems accused of infringement by Cameron. An example of one fracturing system provided by Nitro is shown below,

1

and involves a series of larger high-pressure fluid conduits, valves and connection blocks for delivering fracturing fluid (blue arrows) to a wellhead.



For any given job, Nitro procures, delivers, and physically sets up the equipment at a customer's well site.

6. Nitro's principal place of business and headquarters is located in Nordheim, Texas, where over 40 people are employed. I will refer to this as simply the "Nordheim Office."

7. All technical documents of Nitro, including engineering drawings and schematics associated with the arrangement of the accused fracturing systems, are housed and maintained at the Nordheim Office.

8. All financial documents of Nitro, including documents reflecting revenue, profits and costs associated with the accused fracturing systems, are housed and maintained at the Nordheim Office.

9. The key employees of Nitro live in or near the Nordheim area, and they work directly from the Nordheim Office when they are not traveling to meet customers for business or to customer well sites to manage operations These employees include: (1) the President of Nitro, Bobby Koricanek; (2) the General Manager of Nitro, Brian Harper; (3) the Sales Manager of Nitro, Tony Medellin; (4) the Vice President, Jackie Simpson Jr., and (5) myself. These employees are the most knowledgeable about financial information, technical information, and sales and marketing relating to the accused systems.

10. Virtually all of Nitro's customers are based out of Houston, Texas, including but not limited to Oxy USA, Inc. and ConocoPhillips Co.

11. When it comes to securing a job from a customer or supply chain procurement for a customer, Nitro deals almost exclusively with customer employees or representatives at the customers' corporate offices in Houston, TX.

12. When technical drawings are prepared by Nitro for a customer, they are almost always sent to customer employees or representatives in Houston for approval or modification, even if the well site for the job is located far away, like in Odessa.

13. Nitro visits Houston so frequently to visit customers that Nitro has a permanent apartment in Houston that is used by Nitro employees for customer visits. If a trial were held in Houston, Nitro employees would not need a hotel because they could instead use this apartment.

14. When Nitro is preparing for any well site job, all equipment for the job is first delivered to the Nordheim Office, where it is inspected and packaged with all other equipment

designated for a particular well site. If the customer well site is within a certain geographic distance of Nordheim, the equipment is delivered directly to the customer well site.

15. If a customer well site is beyond a certain geographic distance, for example hundreds of miles away in Odessa, then the equipment is sent to Nitro's small office and equipment yard in Monahans, Texas, where it is received by Nitro employees prior to delivery to the customer well site. In some cases, equipment is still sent directly to a customer well site in west Texas from Nordheim, rather than going to the Monahan's staging site first. While Nitro has a small office and equipment yard in Monahans that location does not house or maintain the technical documents or financial documents previously discussed. The Monahans location is merely a "staging" site, which receives equipment from the Nordheim Office for West Texas jobs before it is delivered for installation and setup at the customer well sites. To the extent a well site is closer to Nordheim, the Monahans location is not used for staging and instead the equipment is sent directly to the well site from Nordheim.

16. When a well site job is complete, the equipment is always sent back to Nordheim where it is inspected and maintenance is performed for re-use in future jobs.

17. Only lower-level Nitro employees, including an administrative assistant, district manager, and field or service hands, work at the Monahans location. As discussed above, the employees most knowledgeable about technical and financial information relating to the accused fracturing systems work in the Nordheim Office.

18. I understand that Cameron has identified a Nitro shop location in Odessa, Texas in its complaint as a "regular and established places of business." The identified shop is completely unrelated to the fracturing systems accused of infringement, and is not used by Nitro for work

related to those systems. The shop does not house or maintain any documents related to the accused systems, and no employees that work at that shop would have knowledge of these accused systems.

19. Nitro has no connection to Waco, Texas or any area around Waco.

20. Nitro has never performed oil and gas work for customers in or around Waco, Texas.

21. Nitro has no accused systems or structures in or around Waco, Texas.

22. Nitro has no offices in or around Waco, Texas.

23. Nitro has no real estate holdings in or around Waco, Texas.

24. Nitro does not pay any real estate or other municipal taxes in the Waco, Texas area.

25. Nitro does not maintain or store any documents or information in or around Waco, Texas, including any of the technical or financial documents previously mentioned.

26. Nitro has no employees in or around Waco, Texas and Nitro employees have not performed any work in or around Waco, Texas.

27. Nitro is unaware of any customers' well sites in or around Waco, Texas.

28. To the extent Nitro interacts or communicates with customers or customer representatives on site at wells, none of those wells are anywhere near Waco as discussed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Nordheim, Texas on April 21, 2020.

*Wesley Clayton*

Wesley Clayton