**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **CAMERON INTERNATIONAL** | § | |
| **CORPORATION,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION 6:20-cv-00125-ADA** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **NITRO FLUIDS L.L.C.,** | § | |
| *Defendant.* | § | |

**ORDER DENYING DEFENDANT NITRO'S
MOTION TO DISMISS UNDER FRCP 12(b)(3) AND MOTION TO TRANSFER VENUE
UNDER 28 U.S.C. § 1404(a)**

Came on for consideration this date the Motions of Defendant Nitro Fluids L.L.C. ("Nitro") to dismiss under Fed. R. Civ. P. 12(b)(3) and to transfer under 28 U.S.C. § 1404(a) filed on April 24, 2020. ECF No. 16–17. Plaintiff Cameron International Corporation ("Cameron") responded on May 1, 2020 (ECF No. 21–22) and Nitro replied on May 8, 2020. (ECF No. 23–24). After careful consideration of the above briefings, the Court **DENIES** Nitro's motion to dismiss and **DENIES** Nitro's motion to transfer the case to the Southern District of Texas ("SDTX") for the reasons described below.

### I.    Factual Background and Procedural History

Cameron filed this lawsuit on February 17, 2020 alleging infringement of U.S. Patent Nos. 9,915,132 ("the '132 Patent") and 10,385,645 ("the '645 Patent"). ECF No. 1. According to Nitro, the '132 Patent, titled "Well Fracturing Manifold Apparatus," generally describes a fracturing manifold providing fracturing fluid to one or more fracturing trees. ECF No. 1, Ex. A, 1:65–67. The '645 Patent, titled "Fracturing Manifold Systems and Methods," generally

describes a fracturing system having a fracturing manifold. ECF No. 1, Ex. B, 1:59–60. Cameron alleges that Nitro's fracturing system infringes on the '132 and '645 Patents. ECF No. 1, ¶ 14.

Nitro filed a motion to dismiss under Fed. R. Civ. P. 12(b)(3) and the first-to-file rule and a motion to transfer venue under 28 U.S.C. § 1404(a). ECF No. 16, 17. Nitro requested that the case, WDTX Civil Action No. 6:20-cv-00069-ADA ("Waco Case"), be dismissed for improper venue under the first-to-file rule. ECF No. 16 at 1. Alternatively, Nitro requested that the case be transferred to SDTX as another case with the same parties, SDTX Civil Action No. 4:18-cv-2533 ("Houston Case"), is in that district. ECF No. 17 at 1.[1]

In the Houston Case, Cameron asserts U.S. Patents Nos. 9,903,190 ("the '190 Patent"), 9,932,800 ("the '800 Patent"), and 10,094,195 ("the '195 Patent") against Nitro's fracturing system. ECF No. 16, Ex. 13. According to Cameron, the '190 Patent, titled "Modular Fracturing System," generally describes "fracturing systems including manifolds and skid assemblies for supplying fracturing fluid to wells." ECF No. 17, Ex. 12, 1:56–57. The '800 Patent, titled "Fracturing Manifold Systems and Methods," generally describes "fracturing systems having a fracturing manifold." ECF No. 17, Ex. 10, 1:59–60. The '195 Patent, titled "Fracturing Fluid Distribution Systems and Methods," generally describes "adjustable fracturing systems that facilitate alignment and coupling of a fracturing manifold with a fracturing tree via a fluid connection." ECF No. 17, Ex. 11, 1:61–62. A Markman hearing has been held for the '195 Patent with both parties subsequently filing cross-motions for summary judgment while the

---

[1]Nitro does not reference the first-to-file rule within its Motion to Transfer. However, under Fifth Circuit precedent, a district court should consider transfer when analyzing a motion to dismiss under the first-to-file rule even when a Motion to Transfer is not present. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). Fifth Circuit precedent also dictates that dismissing the case would be an abuse of discretion. *See id.* Therefore, the Court denies the Motion to Dismiss and will proceed with the first-to-file rule analysis with respect to Nitro's Motion to Transfer.

SDTX has stayed litigation of the '800 Patent and lifted the stay of the '190 Patent in October 2019. ECF No. 16, Ex. 13.

## II.    Transfer Under First-to-File Rule

### a.    Legal Standard

The Court applies Fifth Circuit precedent to a procedural, non-patent issue. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013); *Valeo, Inc. v. Federal-Mogul Corp.*, EP-13-CV-115-PRM, 2013 U.S. Dist. LEXIS 18767, at *5, n.1 (W.D. Tex. Oct. 17, 2013).[2] The Fifth Circuit follows the "first-to-file" rule which determines how a court decides the merits of substantially similar issues in separately filed cases. *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914, 920 (5th Cir. 1997). The first-to-file rule dictates that the court in which an action is first filed should determine whether subsequently filed cases involving substantially similar issues should proceed. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 948 (5th Cir. 1997) (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ("in the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case."). The first-to-file rule also provides that the first-filed court may decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated. *Id.* When related cases are pending before two federal courts, the court in which the case was last filed may refuse jurisdiction if the issues raised by the cases substantially overlap. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)

---

[2]The Court acknowledges Cameron's argument that Federal Circuit precedent regarding the first-to-file rule should apply rather than regional circuit precedent. However, the Court does not agree that this analysis requires enough substantive patent law to warrant the control of Federal Circuit precedent. The first-to-file rule has been applied widely outside of patent cases as a procedural rule, so regional circuit precedent applies. *See Valeo,* 2013 U.S. Dist. LEXIS 18767, at *5, n.1. The cases cited by Cameron pertain to a later filed infringement action in relation to an earlier filed declaratory judgment action which is governed by Federal Circuit precedent. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345–1346 (Fed. Cir. 2005). Here, both cases are infringement actions, so the cases can be examined under the first-to-file rule without applying substantive patent law. While the analysis for substantial overlap will necessitate discussion of the similarity of the patents, the Court will not perform analyses characteristic of patent cases such as claim construction that would warrant the use of Federal Circuit precedent.

(citing *Save Power*, 121 F.3d at 950; *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728 (5th Cir. 1985)). The second court only determines if a likelihood of substantial overlap of issues between the two suits has been demonstrated. *Mann Mfg.*, 439 F.2d at 408. The first filed court resolves the question of whether both suits should proceed. *Id.* The rule rests on principles of comity and sound judicial administration. *See Save Power,* 121 F.3d at 950; *West Gulf,* 751 F.2d at 728. "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf,* 751 F.2d at 729.

When considering whether a later-filed case should be dismissed or transferred, "[t]he crucial inquiry is one of 'substantial overlap'" between the cases. *Save Power*, 121 F.3d at 950 (quoting *Mann Mfg.*, 439 F.2d at 408). The cases do not have to be identical for the first-to-file rule to be applicable. *Id.* When the overlap between the two cases is not complete, the Court will consider factors such as "the extent of the overlap, the likelihood of conflict, the comparative advantage and interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus, Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). "In patent cases, courts determining whether cases were substantially similar have examined whether they involved the same parties, the same technology, the same inventors, overlapping remedies, the same witnesses, or overlapping issues in claim construction." *SIPCO, LLC v. Emerson Elec. Co.*, No. 6:15-CV-907, 2016 WL 7743496, at *3 (E.D. Tex. July 1, 2016).

The Court must determine if there are "sufficiently compelling circumstances to avoid the rule's application." *Mann Mfg.*, 439 F.2d at 407. The *Volkswagen* convenience factors for a motion to transfer venue can be utilized to determine if compelling circumstances exist that warrant not applying the first-to-file rule. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d

599, 602–03 (5th Cir. 1983). The Court recognizes the Fifth Circuit's endorsement of the use of the *Volkswagen* convenience factors to determine if compelling circumstances exist but acknowledges the Fifth Circuit's silence on how to use the factors in the first-to-file rule context. *Id.* The Court could either use the "heavy burden" analysis that is used when analyzing a transfer motion outside the context of the first-to-file rule or determine that a lack of a balance of convenience factors favoring transfer equates to compelling circumstances. *See QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy"). In choosing its method, the Court recognizes that the compelling circumstances should function as an exception to the first-filed rule. *See Mann Mfg.*, 439 F.2d at 407. However, utilizing the heavy burden test would place too much emphasis on the exception and create an almost coequal requirement within the Fifth Circuit framework rather than an exception. The Court also looks to precedent within this district and in the Second Circuit. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Hart v. Donostia LLC,* No. EP-17-CV-134-KC, 290 F.Supp.3d 627 (W.D. Tex. March 1, 2018). The El Paso Division of this Court utilized a balance of factors to determine that transfer was appropriate, and no compelling circumstances existed. *Hart*, 290 F.Supp.3d at 633. The Second Circuit also used the balance of convenience factors in its analysis for compelling circumstances. *See New York Marine*, 599 F.3d at 112. Thus, the Court will determine if a balance of factors weighs in favor of transfer. If a balance of factors does not weigh in favor of transfer, then the Court will conclude that compelling circumstances exist in order to avoid application of the first-to-file rule.

5

### b. Discussion

Nitro argues that substantial overlap exists between the Houston Case and the Waco Case. ECF No. 16 at 12. Nitro further argues that enough substantial overlap exists that the actions would be consolidated in the SDTX if they had been filed in the same court. *Id.* Both cases involve the same two parties, the same two inventors, Nitro's fracturing system, Cameron's Monoline system, the same physical evidence, the same witnesses, and the same technology. *Id.* Nitro cites to case law from the Eastern District of Texas to support its claim that the cases are substantially similar based on these facts alone. *Id.* at 12–13 (citing *Aventis Pharm., Inc. v. Teva Pharm. USA Inc.*, No. 2:06-CV-469, 2007 WL 2823296, at *1–2 (E.D. Tex. Sept. 27, 2007); *Amberwave Sys. Corp. v. Intel Corp.*, No. 2:05-CV-321 2005 WL 2861476, at *1 (E.D. Tex. Nov. 1, 2005)). Nitro also contends that the patents are substantially similar as they are pertain to the same technology, cover the same subject matter, and have considerable overlap in claim terminology. *Id.* at 13.

Nitro argues that this case is similar to another case from the Eastern District of Texas that applied the first-to-file rule. *E-Z-EM, Inc. v. Mallinckrodt, Inc.*, No. 2-09-cv-124, 2010 WL 1378820 (E.D. Tex. Feb. 26, 2010), *report and recommendation adopted*, 2010 WL 1378665, at *2 (E.D. Tex. March 31, 2010). *Id.* The court in that case held that the originally filed suit was the first filed action because the "three actions involve identical parties," "the two patents at issue cover generally the same technology," and the cases involved overlapping inventors, overlapping accused products, and overlapping remedies sought. *Id.* (citing *E-Z-EM*, 2010 WL 1378665, at *5). The court further found that "many of the witnesses will be the same" and that claim construction will likely involve overlapping issues. *Id.* (citing *E-Z-EM*, 2010 WL 1378665, at *6). In this case, Nitro asserts that the parties, accused and allegedly patented products,

technology, customers, witnesses, inventors, and remedies sought are all identical. *Id.* at 15. Nitro also alleges that the evidence adduced in both actions will be the same and there will be a near complete overlap in issues. *Id.* Nitro concludes that the Houston Case is the first-filed case and the Waco Case should be considered as part of the larger dispute similar to *E-Z-EM*. *Id.*

Cameron argues that the cases do not substantially overlap even though the cases involve the same parties, overlapping accused products, and related patents because the Waco Case has distinct patents from the Houston Case and cites to the Federal Circuit to support its claim. ECF No. 22 at 9 (citing *Abbott Labs. v. Johnson & Johnson, Inc.*, 524 F.Supp.2d 553, 558 (D. Del. 2007), *aff'd*, 297 F. App'x 966 (Fed. Cir. 2008). The district court in that case held that the first-to-file rule could not apply to a newly issued patent because the patent did not exist prior to the earlier-filed case's filing date. *Id.* at 10. (citing *Abbott Labs.*, 524 F.Supp.2d at 558). Cameron argues that Nitro's citation to *E-Z-EM* is improper because the Eastern District of Texas utilized the Fifth Circuit standard as opposed to the Cameron's proposed Federal Circuit standard. *Id.* at 13. Cameron argues that lack of overlap between the patents should lead to a similar outcome under the preferred Federal Circuit standard (as well as the Fifth Circuit standard) in this case. *Id.* at 9, 18. Cameron contends that the '132 Patent is not in the same family as the '190 Patent, so a shared inventor does not create any relation between the '132 and '190 Patents. *Id.* at 10–11. Cameron also argues that the '645 Patent and the '195 Patent patents have different claims and that the '645 Patent was not issued until after the Houston Case began, so the '645 Patent as an indirect continuation of the '195 Patent alone does not implicate the first-to-file rule. *Id.* at 11. Cameron also argues that the evidence and witnesses in the Waco Case will be different because the Waco Case is directed towards the infringing activity in the WDTX as opposed to the activity in the SDTX. *Id.* at 12.

In its reply, Nitro reiterates that the substantial overlap of the Houston and Waco Cases warrant transfer. ECF No. 24 at 1. Nitro argues that the type of activity is the same despite occurring in the WDTX, so the evidence and witnesses from Nitro and Cameron will be the same as well. *Id.* Nitro also argues that *Abbott Labs* is non-precedential and non-binding, so the case should be given less weight than Fifth Circuit precedent. *Id.* at 2 (citing *Abbott Labs*, F. App'x at 966). Also, Nitro argues that all patents were issued prior to the filing of the Waco Case which should be the relevant date. *Id.* Nitro also asserts that the patents in the Waco and Houston Cases are related to the same technology which is distinguishable from *Abbott Labs*. *Id.* at 4. Nitro also argues that Cameron's example of the term "goathead" being unique to the '645 Patent is inadequate as "goathead" describes the same component found in the '132 Patent labelled "connection block." *Id.* at 6.

As mentioned above, this Court follows the precedent of the Fifth Circuit when applying the first-to-file rule. When considering a motion to transfer venue under the first-to-file rule, "[t]he crucial inquiry [of the Court] is one of 'substantial overlap'" between the cases. *Save Power*, 121 F.3d at 950 (quoting *Mann Mfg.*, 439 F.2d at 408). When the overlap between the two cases is not complete, the Court will consider factors such as "the extent of the overlap, the likelihood of conflict, the comparative advantage and interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus, Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). In this case, the cases involve the same two parties, the same two inventors, Nitro's fracturing system, Cameron's Monoline system, the same physical evidence, the same witnesses, and the exact same technology. *See* ECF No. 16 at 12. While Cameron argues that the infringing activity, although the same type of activity, alleged in the Waco Case involves different third parties, the Court recognizes that a large majority of the evidence and

witnesses will be the same since the majority of the evidence and witnesses will come from Cameron and Nitro. *See* ECF No. 22 at 12.

In examining the patents, the patents cover the same alleged infringing product and the same alleged patented product. *See* ECF No. 16 at 13. The patents also share some similar terms such as fracturing manifold, fracturing tree, fluid conduit, and adjustment joint. *See* ECF No. 16 at 10, n.3. Furthermore, the patents both cover the same technology and subject matter of fracturing systems with fracturing manifolds and trees connected via connection blocks and piping. *See id.* at 10. Cameron claims that the term "goathead" is listed in the '195 Patent but not in the '645 Patent. *See* ECF No. 22 at 8. However, the component described by "goathead" is present in the '132 Patent as the "connection block." *See* ECF No. 24 at 6. Cameron also contends that the issuance date of the '645 Patent after the filing of the Houston Case precludes the Waco Case from being substantially similar. *See* ECF No. 22 at 11. However, the issuance date does not preclude the patents from being substantially similar. *See* ECF No. 24 at 2. In addition, the authority that Cameron cites to support its contention is a nonbinding district court case from Delaware. *See* ECF No. 22 at 9 (citing *Abbott Labs.*, 524 F.Supp.2d at 558). In that case, the court held that the cases did not substantially overlap when the patents were distinct. *See Abbott Labs.*, 524 F.Supp.2d at 558.  However, the patents in the Waco and Houston Cases pertain to the same technology whereas the patents in *Abbott Labs.* relate to different technologies. *See id*. The Federal Circuit only affirmed the ruling in a one sentence Rule 36 opinion. *See Abbott Labs.*, 297 F. App'x at 966. The ruling, which is also nonprecedential, affirms the district court's use of both regional circuit and Federal Circuit precedent pertaining to the first-to-file rule. *See id*. As such, the Court takes little guidance from this nonprecedential opinion and follows the precedent set by the Fifth Circuit.

While the patents are distinct and the infringing activity in the WDTX involves different third parties, the overlap of subject matter, claim terms, and products combined with the same parties, inventors, technology, and field are significant. Therefore, the Court finds that a likelihood of substantial overlap exists between the two cases. Before ruling on the motion to transfer venue, the Court must determine if there are "sufficiently compelling circumstances to avoid the rule's application." *Mann Mfg.*, 439 F.2d at 407. The Court will utilize the *Volkswagen* convenience factors to determine if a balance of the factors favors transfer. *Mission Ins.*, 706 F.2d at 602–03. If the Court cannot find that a balance of factors favors transfer, then the Court will conclude that sufficiently compelling circumstances exist.

## III.   Analysis of Convenience Factors for Compelling Circumstances

### a.   Legal Standard

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *Volkswagen II*, 545 F.3d at 314. ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

In the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*) (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.").

A court may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018). The briefings submitted by Nitro and Cameron primarily focused on the all other practical problems, the cost of appearance for witnesses, and the local

interest factors, and the Court has taken their additional arguments into consideration in determining whether compelling circumstances exist.

### b.  Discussion

#### i.  Relative Ease of Access to Sources of Proof

To consider the ease of access to sources of proof, the Court looks to where documentary evidence, such as documents and physical evidence is stored, as well as witnesses. *Volkswagen II*, 545 F.3d at 316. As Nitro is the accused infringer, Nitro likely possesses the bulk of the relevant documents for this case. *See, e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Nitro claims that the bulk of its technical and financial documents is held in Nordheim. ECF No. 17 at 9. Nordheim is equal travel distance from Houston and Waco. *Id.* Cameron, however, alleges that the majority of evidence, including documents and witnesses, regarding the accused activities is within this District at Nitro's office in Monahans, at third-party worksites, or at Cameron's own regional facilities. ECF No. 21 at 7. The Court concludes that Nitro is in the best position to know the location of the relevant documents. While the documentary evidence is not in the transferee division and is equidistant from Waco and Houston, the Court cannot look past the fact that the evidence is located in the SDTX. Thus, the location of the documentary evidence favors transfer.[3]

---

[3] While not at issue in this case because the location of the documents does not substantially affect either district, the Court, as previously noted in *Fintiv*, believes that this factor conflicts with the realities of modern patent litigation. *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sept. 13, 2019). Most documents produced in modern patent litigation exist as electronic documents on a party's server. In this Court's view, there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic. District courts—particularly those with patent-heavy dockets which have very significant document productions—have recently begun to acknowledge this reality. *Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216 at 8-9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents

Despite stating that the bulk of its witnesses is located in Houston, Nitro acknowledges that the accused infringing activity took place in this District. ECF No. 17 at 15–16. Cameron asserts that there are third party witnesses at the worksites in this District that have relevant information. ECF No. 21 at 7. As party and non-party witnesses exist in both districts, this Court finds that the location of the witnesses is neutral. While the Court concludes that the location of witnesses is neutral, the location of documentary evidence points towards Houston. As such, this Court concludes that this factor favors transfer.

### ii.   Availability of Compulsory Process

The Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Similarly, a court may subpoena a witness within the state when the witness is a party, an officer of the party, or a person who would not incur substantial expense when commanded to attend trial. FED. R. CIV. P. 45(c)(1)(B). Moreover, the ability to compel live trial testimony is crucial for evaluating witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

This Court finds this factor to be neutral. Each party has alleged that witnesses reside in both districts, including employees in the Southern District and employees at third-party worksites in the Western District. ECF No. 21 at 12. Beyond the party witnesses, Nitro has stated

---

are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."). However, under current Fifth Circuit precedent, the physical location of electronic document does affect the outcome of this factor. *See, e.g., Volkswagen II*, 545 F.3d at 316.

that there are non-party witnesses residing in or around Houston who are customers of the company. ECF No. 17 at 15. Additionally, Cameron alleges, and Nitro acknowledges, that non-party witnesses are in the Western District at the worksites where Nitro installed the accused products. ECF No. 21 at 9. There are alleged non-party witnesses that are further than 100 miles from either the SDTX or this District. ECF No. 17 at 15; ECF No. 21 at 12. Each non-party witness, however, "resides, is employed, or regularly transacts business in person" within Texas and can be compelled to appear. FED. R. CIV. P. 45(c)(1)(B)(ii). Nitro alleges that its witnesses would incur substantial expense by traveling to Waco and having to rent hotels. ECF No. 17 at 15. Nitro, however, fails to consider or acknowledge the travel cost for parties traveling from the WDTX to the SDTX. ECF No. 17 at 15. Therefore, Nitro has not sufficiently alleged that remaining in the WDTX would force a majority of the non-party witnesses to incur a "substantial expense." *Id*; ECF No. 17 at 15. Furthermore, the named inventor of the '190 patent, Gregory Conrad, resides in Calgary, Canada, which is beyond the compulsory process of either district. ECF No. 17 at 6. As both courts are in Texas and both courts can compel attendance of in-state third parties, this factor is neutral towards transfer. *See* FED. R. CIV. P. 45(c)(1)(B)(ii).

### iii.   Cost of Attendance for Willing Witnesses

"The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a)." *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009). The Court considers all potential material and relevant witnesses. *Fintiv, Inc.*, 2019 WL 4743678, at *6. The convenience of party witnesses is given relatively little weight compared to non-party witnesses. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010). "When the

distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *In re Genentech, Inc.*, 566 F.3d at 1343.

Nitro argues that the Houston court is more convenient for the inventors of the patents, employees in Houston and in Nordheim, and Nitro's customers who are primarily based in or around Houston. ECF No. 17 at 11–12. Nitro contends attendance in Houston would be less costly and less time consuming. *Id*. As Cameron points out, however, "the convenience of party witnesses is typically given little weight because the witnesses' employer could compel their testimony at trial." *CloudOfChange*, No. 6:19-CV-00513, at *2. Additionally, while the Court considers the cost of attendance for party and non-party witnesses, it gives the cost of attendance of non-party witnesses considerably more weight. *See ADS Sec. L.P.,* 2010 WL 1170976, at *4. The majority of the witnesses that Nitro relies on are party witnesses with the exception of unnamed customers and the inventors. ECF No. 17 at 11–12. Cameron has also put forward third-party witnesses from the worksites in the WDTX because Nitro admits to setting up and installing the accused products at the third-party worksites in this District. ECF No. 21 at 10. Additionally, Cameron claims that the parties' employees within the Western District are relevant witnesses. *Id*. While the SDTX could be more convenient for the unnamed non-party witnesses and the inventors, the non-party witnesses in the Western District make this point neutral. Neither party claims a definite number of witnesses in either district to allow for this Court to accurately determine the burden of attendance for either party. *See* ECF No. 17 at 11–12; ECF No. 21 at 10. Because "the majority of the identified potential witnesses are party witnesses, and each party has identified potential non-party witnesses in both districts," this

Court finds this factor to be neutral towards transfer. *CloudOfChange*, No. 6:19-CV-00513, at *9.

### iv.   All other practical problems that make trial of a case easy, expeditious and inexpensive

When examining practical problems, this Court considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*). Nitro argues that hearing the case in the SDTX would be more efficient because of the Houston Case also in the SDTX. ECF No. 17 at 13. Nitro points out that both cases accuse the same Nitro product of infringement and involve identical parties, inventors, third parties, and patent technologies. *Id.* Nitro also notes that the court in the Houston Action is already familiar with the patented technology and accused products because of the identical products and the similarities in the asserted patents. *Id.* Nitro also argues that hearing the case in the WDTX would create practical difficulties such as the possibility of inconsistent rulings and waste of judicial resources. *Id.* In addition, Nitro contends that denying transfer would establish a precedent allowing plaintiffs to file a second lawsuit in an unrelated venue despite a similar suit filed earlier in a different venue. *Id.*

Cameron argues no efficiency would be gained through transfer because the Houston Case has been pending for almost two years and involves different patents and different infringing activity in a different district. ECF No. 21 at 11–12. Cameron points out that no significant progress has taken place in the Houston case for this Court to duplicate. *Id.* at 12. Cameron also argues that efficiency would be gained if transfer was denied because of Cameron's other lawsuit in this District, *Cameron Int'l Corp. v. Butch's Rathole & Anchor Service, Inc.*, No. 6:20-cv-00124-ADA. *Id.* The case against Butch's Rathole & Anchor Service,

16

Inc. involves the same patents, similar accused products, and is at roughly the same stage as this case. *Id.* Cameron contends that transferring this case in light of the co-pending litigation could result in inconsistent claim constructions for the same patents. *Id.* Cameron also notes that Cameron has asserted lawfully issued patents in response to Nitro's infringing activity in this District, so Cameron has the right to file in this District while another case involving different patents is proceeding in the SDTX. *Id.*

In its reply, Nitro reiterates that the Houston Case involves the same parties, same accused product, same allegedly patented Cameron product, same inventors, and same witnesses. ECF No. 24 at 4. Nitro also notes that the patents in both cases substantially overlap in claim terminology, and the '645 Patent is substantively identical to the '195 Patent. *Id.* Nitro contends that this case could be consolidated with the Houston Case to avoid the inefficiency of trying virtually identical lawsuits in two separate courts. *Id.* Nitro also asserts that Cameron's other case in this District involves a different party headquartered in the WDTX and different accused products, witnesses, and sources of proof. *Id.* Nitro argues that the Court would not achieve the level of efficiency or cost savings by hearing both of Cameron's cases in the WDTX as opposed to transferring this case to the SDTX. *Id.* Nitro also asserts that the absence of the "most important judicial steps" in the Houston Case weighs in favor of transfer since the Houston Case will address the same issues presented before this Court. *Id.* at 5.

This Court acknowledges that transferring a case to a district with a related, pending action would often make the adjudication of a matter easier and more efficient. *See* ECF No. 17 at 13. However, the pending action in the SDTX has been pending for almost two years with barely any progress. *See* ECF No. 21 at 11–12. The Court will not be performing duplicative work because the SDTX has not made significant progress in the Houston Case. *See id.* at 13. In

addition, this Court has a patent-specific Order Governing Proceedings that is faster than the SDTX. Moreover, the Court recognizes that the particular court in the SDTX takes on average three years to issue claim construction. *See* ECF No. 21 at 14. While the Court notes Nitro's attempt to impeach this evidence, the Court also points out that Nitro provides no evidence beyond its critique of Cameron's evidence. *See* ECF No. 24 at 5. This Court also has a pending action with the same plaintiff, patented system, and patents that would require the same claim construction. *See* ECF No. 21 at 12. The Court determines that the Waco Case can be heard more quickly in this District which will avoid possibly conflicting claim constructions with the patents at issue in the matter already before the Court. Therefore, the Court weighs this factor heavily against transfer.

### v.   Administrative difficulties flowing from court congestion

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Nitro argues that this factor is neutral as the SDTX median time-to-trial from filing for civil cases is 22.9 months as opposed to 27.9 for the WDTX. ECF No. 17 at 15. Nitro does note that trial in this District would occur between 18 and 21 months after filing under the Court's default schedule. *Id.*

Cameron argues that this factor weighs heavily in favor of transfer as the parties could reach trial nearly five months faster in this Court. ECF No. 21 at 14. Cameron also points out that the Houston Case has been pending for over twenty-one months without discovery or a set trial date. *Id.* Cameron also notes that the specific court in the SDTX is even more congested as the issuance of claim constructions averages about three years, so transferring a case to that

district would create further delays. *Id.* Cameron concludes that the case would not be resolved in a comparable timeframe to this District if the case was transferred to the SDTX. *Id.*

In its reply, Nitro alleges that Cameron is largely responsible for the initial slow pace of the Houston Case as Cameron amended its complaint multiple times to add and remove asserted patents. ECF No. 24 at 5. Nitro points out that the case was partially and temporarily stayed due to filed petitions for *inter partes* review, so the pace of the Houston Case is not representative of an ordinary case before the presiding judge. *Id.* Nitro also argues that Cameron's citation to statistics regarding the timeframe to issue claim constructions in the particular court of the SDTX are inaccurate. *Id.*

This Court acknowledges that transferring a case to a district with a related, pending action would alleviate court congestion in this District. However, as mentioned above, the pending action in the SDTX has been pending for almost two years with barely any progress. *See* ECF No. 21 at 11–12. Nitro alleges that Cameron has slowed the progress of the case with its multiple amended complaints. *See* ECF No. 24 at 5. However, the Court notes that the status report submitted by the parties in February for the Houston Case only includes a proposition to the Court from Nitro on a next step to advance the litigation which is opposed by Cameron. *See* ECF No. 16, Ex. 13. With no clear path forward to a timely resolution in the Houston Case, the Court does not give credence to the argument that Cameron is solely responsible for the slow progress of the case. In addition, this Court has a patent-specific Order Governing Proceedings that is faster than the SDTX. Moreover, the Court recognizes that the particular court in the SDTX takes on average three years to issue claim construction. *See id.* at 14. While the Court notes Nitro's attempt to impeach this evidence, the Court also points out that Nitro provides no evidence beyond its critique of Cameron's evidence. *See* ECF No. 24 at 5. Therefore, the Court

weighs this factor against transfer as this Court will be able to hear this case more quickly than the SDTX. *See In re Genentech, Inc.*, 566 F.3d at 1347.

### vi.   Local interest in having localized interests decided at home

Nitro argues that Houston has a much greater local interest than Waco. ECF No. 17 at 14. Nitro points out that a key inventor lives in the Houston area and allegedly conceived the inventions in Houston. *Id.* Nitro also notes that Cameron is based in Houston and employs over 2,500 personnel in Houston. Nitro also argues that the alleged infringement occurred at customer's offices and well sites in Houston. *Id.* In contrast, Nitro asserts that neither party nor any relevant third parties are near Waco and that the accused systems are not designed, sold, or used near Waco. *Id.*

Cameron argues that this factor is neutral as Nitro's headquarters in Nordheim is equidistant from Houston and Waco. ECF No. 21 at 15. Cameron also notes that both parties have offices and employees in the WDTX and compete for customers in the WDTX. *Id.* Cameron also points to Nitro's concession that Nitro performs potentially infringing set-ups and installations in the WDTX including at Nitro's Monahans office. *Id.* Cameron also notes that Nitro did not provide details regarding the origin of the offers for sale in Houston as they could potentially originate either from Nordheim or Monahans. *Id.*

In its reply, Nitro points out that Cameron cannot point to any relevant document, witness, or piece of evidence within two hundred miles of Waco. ECF No. 24 at 5. As such, Nitro argues that this factor should weigh towards transfer as the consideration should be the relative local interest of the transferee and transferor venues, not entire districts. *Id.* (citing *Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 WL 12479284,

at *7 (W.D. Tex. Aug. 12, 2014) ("The ultimate outcome of this suit likely affects local San Antonio interests more acutely than local Austin interests.")).

The Court acknowledges that the headquarters for both parties are in the SDTX and the patents were invented in SDTX for one of the largest employers in SDTX. *See* ECF No. 17 at 14 However, infringing activity is taking place in the WDTX including at Nitro's Monahans office. *See* ECF No. 21 at 15. Nitro cites to case law to support its contention that only the transferee and transferor venues should be considered for the local interest factor. *See Mimedx*, 2014 WL 12479284, at *7. However, this case specifically dealt with an intra-district transfer rather than an inter-district transfer. *See id.* As such, the transferor and transferee districts are relevant for the consideration of this factor. While the location of the headquarters and the activity within the SDTX are significant, the Court cannot overlook the substantial presence and activity of both Nitro and Cameron in the WDTX. Therefore, the Court weighs this factor only slightly in favor of transfer.

### vii.   Familiarity of the Forum with the Law

The parties agree that this factor is neutral towards transfer. ECF No. 17 at 15; ECF No. 21 at 15. The Court agrees with the parties.

### viii.   Avoidance of Unnecessary Problems of Conflict of Laws

The parties agree that this factor is neutral towards transfer. ECF No. 17 at 15; ECF No. 21 at 15. The Court agrees with the parties.

### ix.   Conclusion

Having found that the local interest factor weighs slightly in favor of transfer, the court congestion factor weighs against transfer, the all other practical problems weight heavily against transfer, and the other factors being neutral, the Court finds that Nitro has not demonstrated that

a balance of the convenience factors favors transfer. As such, compelling circumstances exist to warrant the avoidance of the application of the first filed rule. *See New York Marine*, 599 F.3d at 112; *Mann Mfg.*, 439 F.2d at 407.

**IV.    Conclusion**

It is therefore **ORDERED** that Nitro's motions to dismiss and to transfer venue to the Southern District of Texas are **DENIED**.

**SIGNED** this 16th day of June, 2020.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

22