# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| CAMERON INTERNATIONAL CORPORATION, | § § § § |
| Plaintiff, | § § CIVIL ACTION NO. 6:20-cv-00125 |
| v. | § § |
| NITRO FLUIDS L.L.C., | § **JURY TRIAL REQUESTED** § |
| Defendant. | § § § § |

# PLAINTIFF CAMERON INTERNATIONAL CORP.'S
# <u>REPLY CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

|      |                                                                              | Page |
|------|------------------------------------------------------------------------------|------|
| I.   | Introduction.................................................................................................................. | 1 |
| II.  | Nitro Misunderstands Its Burden................................................................................. | 1 |
| III. | Disputed Terms............................................................................................................ | 2 |
|      | A.   "fluid conduit" ................................................................................................ | 2 |
|      | B.   "rigid fluid pathway" ...................................................................................... | 5 |
|      | C.   "a first connection block positioned at the well fracturing tree" ............................. | 6 |
|      | D.   "connection block"......................................................................................... | 7 |
|      | E.   "fracturing operation"..................................................................................... | 7 |
|      | F.   "fracturing tree" / "fracturing trees" ................................................................ | 8 |
|      | G.   "fracturing manifold" / "fracturing fluid distribution manifold"........................... | 9 |
| IV.  | Conclusion .................................................................................................................. | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alloc, Inc. v. ITC*,
   342 F.3d 1361 (Fed. Cir. 2003) ................................................................................. 3, 4

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
   637 F.3d 1324 (Fed. Cir. 2011) ....................................................................................... 3

*Eon Corp. IP Holdings v. Silver Spring Networks*,
   815 F.3d 1314 (Fed. Cir. 2016) ....................................................................................... 8

*Falana v. Kent State Univ.*,
   669 F.3d 1349 (Fed. Cir. 2012) ....................................................................................... 4

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ....................................................................................... 8

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
   No. 2:17-CV-00676-RWS-RSP, 2018 U.S. Dist. LEXIS 155822 (E.D. Tex.
   Sep. 12, 2018) ................................................................................................................. 4

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) ................................................................................. 3, 4, 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ........................................................................................................ 7

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
   Case No. 6:11-cv-492-RWS-KNM, 2017 U.S. Dist. LEXIS 148100 (E.D. Tex.
   Sep. 13, 2017) ................................................................................................................. 7

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................. 1, 2, 3, 4

*Praxair, Inc. v. ATMI, Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008) ................................................................................. 3, 4

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ....................................................................................... 2

*True Chem. Sols., LLC v. Performance Chem. Co.*,
   No. MO-18-CV-00078-ADA (W.D. Tex. Sept. 25, 2019) .............................................. 2

## I. INTRODUCTION

Nitro admits that its central thesis is based on the (mistaken) belief that "the disclosures of both Patents-in-Suit demonstrate that the inventions *require* adjustability" through specific adjustment joints. ECF No. 45-1 at 1. To reach this conclusion, Nitro misapplies fundamental claim construction canons—ignoring the claims' plain language and importing limitations from the specification into the claims—while disregarding claim differentiation principles. *See id.*

Nitro is also wrong that "[n]either patent discloses an embodiment that is without adjustability" provided by adjustment joints, pivot joints, or swivels. *Id.* The '645 Patent provides adjustability by, for instance, positioning pipe joints and connection blocks as desired before securing them together. *See* ECF No. 1-2 at 8:40–43. And the '132 Patent introduces the adjustable elements Nitro seeks to read into all claims as present in only "one embodiment," and clarifies that it discloses that embodiment "without limitation to the claimed subject matter." ECF No. 1-1 at 2:2–18. Nitro also ignores the fact that the patentee knew how to claim adjustable components when desired (*see, e.g.*, ECF No. 1-1 at claim 1; ECF No. 1-2 at claims 6, 9), but chose not to do so in the asserted claims.

In sum, the claims and specifications compel one conclusion: they do not require, as Nitro argues, "at least one adjustable joint (adjustment, pivot, or swivel) *somewhere* in the claimed system." ECF No. 40-1 at 2. This is why Nitro could not identify any definition or disavowal of claim scope in the intrinsic record to support its conclusion. The Court should give the claims the full scope afforded by their plain and ordinary meanings.

## II. NITRO MISUNDERSTANDS ITS BURDEN

Claim construction begins with the words in the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc). As this Court has explained, "[t]he 'only two exceptions to [the] general rule' that claims are construed according to their plain and ordinary

meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term in either the specification or during prosecution." *True Chem. Sols., LLC v. Performance Chem. Co.*, No. MO-18-CV-00078-ADA, at 3 (W.D. Tex. Sept. 25, 2019) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

Nitro insists this Court's claim construction standard as explained in *True Chemical* is wrong and "is simply not the law." *See* ECF No. 45 at 2. Nitro instead suggests courts may import limitations into the claims from the specification even "absent express definitions or disavowals in the specification" because *Phillips* requires reading the claims in view of the specification. But the Federal Circuit has rejected Nitro's understanding of *Phillips*.

For instance, since *Phillips* the Federal Circuit has reaffirmed that "words of a claim are generally given their ordinary and customary meaning," and that (as above) there "are only two exceptions to this general rule." *Thorner*, 669 F.3d at 1365 (applying *Phillips*). This does not mean, as Nitro says, that this Court and the Federal Circuit have improperly made the specification "subservient to the dictionary." *See* ECF No. 45 at 6. It simply means the inquiry begins with the claims' words and must "avoid importing limitations from the specification into the claims." *Phillips*, 415 F.3d at 1323.

### III. DISPUTED TERMS

#### A. "fluid conduit"

A "channel for conveying fluid" is consistent" with the term "fluid conduit," but Nitro also contends the Court should read "adjustment joint or pivot joint" into this otherwise simple term. *See* ECF No. 45 at 5–6. The claims do not support this. Independent claim 9, for instance, describes the fluid conduit as comprising pipes and connection blocks. ECF No. 1-1. It does not recite adjustment joints or pivot joints. But its dependent claim 11 adds such elements, requiring that "the single fluid conduit [of claim 9] includes at least one adjustment joint." *Id.* This creates a

2

strong presumption that these elements are not required in the independent claim. *See Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1335–36 (Fed. Cir. 2011).

Nitro, however, contends that the claim differentiation presumption does not apply because its proposal for "fluid conduit" disjunctively requires an adjustment joint *or* a pivot joint, and thus (in Nitro's view) a dependent claim requiring only an "adjustment joint" is not superfluous. ECF No. 45 at 8. Under Nitro's theory, every dependent claim limitation could be read into an independent claim disjunctively without raising claim differentiation concerns. Nitro cites no authority that would support that conclusion. This is so because it contradicts claim differentiation principles, which recognize that if an element appears in a dependent claim, this suggests that "when the inventor wanted to restrict the claims to require [the limitation], [the inventor] did so explicitly." *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

Rather than rebutting the claim differentiation presumption (as Nitro argues), the specification confirms it. The specification underscores that the connection blocks and pipes in claim 9 differ from pivot joints and the adjustment joints of claim 11. ECF No. 1-1 at 4:66–5:3. When present, the specification identifies the pivot joints and adjustment joints explicitly. *See id.* But they are not, as Nitro insists, in every embodiment. *See id.* at 2:2–6 (explaining that such joints are in "one embodiment" described "without limitation to the claimed subject matter").

Lacking support in the specification, Nitro misinterprets *Phillips* to permit reading limitations like "adjustment joint" or "pivot joint" into otherwise simple claim terms like "fluid conduit," with no supporting definition in the specification, and with no clear disavowal of claim scope, if doing so does not read in an embodiment's "exact configuration." *See* ECF No. 45 at 7 (citing *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1370 (Fed. Cir. 2003); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1324 (Fed. Cir. 2008)). None of these cases support Nitro's proposition.

***First***, the Federal Circuit has already distinguished *Alloc* under similar circumstances, explaining that it ***does not*** hold that courts may read elements from preferred embodiments into the claims, even when those elements appear in ***every*** disclosed embodiment. *See Falana v. Kent State Univ.*, 669 F.3d 1349, 1355 (Fed. Cir. 2012). The decision in *Alloc* rather turned on the fact that "the specification ***defined*** the invention" as including the disputed limitation, and "the applicant emphasized the criticality of [the disputed limitation] during prosecution and distinguished the prior art on that basis." *See id.* (emphasis added). Nitro has identified no such definitions or disavowals of scope.

***Second***, unlike "fluid conduit," which has an ordinary and customary meaning, the disputed term in *Praxair* ("flow restrictor") was a nonce term with no ordinary and customary meaning. *See Godo Kaisha IP Bridge 1 v. Intel Corp.*, No. 2:17-CV-00676-RWS-RSP, 2018 U.S. Dist. LEXIS 155822, at *9 (E.D. Tex. Sep. 12, 2018) (distinguishing *Praxair*). The Federal Circuit explicitly rejected defining that term based on "specific embodiments" in the specification. *Praxair*, 543 F.3d at 1323, 1325. To the contrary, the *Praxair* Court determined it should construe the term ***more broadly*** than the exemplary embodiments suggested. *See id.*

***Third***, *Phillips* does not limit its warnings to importing the "exact configurations" of preferred embodiments into claims, as Nitro contends. *See* ECF No. 45 at 7. Rather, it holds that "[t]he patentee is entitled to ***the full scope of his claims***, and [the Federal Circuit] will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara*, 582 F.3d at 1348 (applying *Phillips*) (emphasis added). Nothing in the plain language of the claim term "fluid conduit" requires adding "comprising an adjustment joint or pivot joint," nor does anything in the specification's description of embodiments.

*Kara* shows how *Phillips* applies in the circumstances that Nitro argues (incorrectly) are

4

present here. It similarly begins with a claim differentiation presumption. *See id.* And in *Kara*, "the specification repeatedly discusses [the disputed limitation]," and it consistently appears "[i]n the only detailed embodiments in the patent." *See id.* But *Kara* held this did not overcome the claim differentiation presumption because "the patentee did not act as his own lexicographer or disavow claim scope." *See id.* This Court should similarly reject Nitro's proposal.

**B.     "rigid fluid pathway"**

Nitro's arguments on this term fail for substantially the same reasons as its arguments on "fluid conduit." Here again, "fluid pathway" and "route for fluid flow" are not substantially different, but there is no patent-law or English-language basis to read the words "comprising an adjustment joint or pivot joint" into that simple phrase. The claims differentiate between embodiments with adjustment joints or swivels (*e.g.*, dependent claims 6 and 9) and those without (*e.g.*, independent claim 1). ECF No. 1-2. The claim differentiation presumption thus applies because the patentee knew how to claim adjustment joints and swivels, and deliberately chose to do so in some claims but not others. *See Kara*, 582 F.3d at 1348.

According to Nitro, its construction does not implicate claim differentiation because it reads the elements of *two* dependent claims (6 and 9) disjunctively into independent claim 1. ECF No. 45 at 12. But just as with "fluid conduit" (*see* Section III.B, *supra*), Nitro cites no support for its theory that an independent claim includes the elements of all directly dependent claims in the disjunctive, or how that theory squares with claim differentiation principles. Instead, it argues that the claim differentiation presumption does not apply because (in Nitro's mistaken view) every embodiment in the specification includes an adjustment joint or swivel. *See* ECF No. 45 at 6–7.

Nitro is wrong on the law. Even if every embodiment included adjustment joints or swivel joints (they do not), this cannot rebut the claim differentiation presumption. *See Kara*, 582 F.3d at 1347. Nitro is also wrong on the facts. The '645 Patent discloses embodiments lacking adjustment

5

joints and swivel joints, including by describing embodiments where pipe joints and connection blocks "could be rotated to desired positions before assembling these components together" to provide for any adjustments. ECF No. 1-2 at 8:40–43. Nitro tries to avoid this embodiment by contorting the specification's wording and context. *See* ECF No. 45 at 9–12.

But the plain text is clear. The specification describes this embodiment without adjustment joints or swivel joints in the context of distinguishing it from the embodiment in Figure 10, which shows such elements. *See id.* at 9. Describing Figure 10, the specification notes that "[a]s ***presently illustrated*** the fluid conduit 26 with rotatable components has three rotational degrees of freedom." *See* ECF No. 1-2 at 8:39–40 (emphasis added). It then explains that "***other embodiments*** could have fewer." *See id.* (emphasis added). Reaching the next logical conclusion, it describes "some instances" where "***adjacent*** [not ***rotatable***] pipes 170 and connection blocks 172 could be rotated to desired positions ***before*** assembling these components together." *Id.* at 8:40–43 (emphasis added). The passage concludes by again distinguishing that embodiment from "some embodiments" that use swivels to facilitate rotating portions of the fluid pathway "***while those portions are connected to one another***." *See id.* at 8:43–48 (emphasis added).

For these reasons, as well as the reasons discussed above with respect to "fluid conduit," the Court should reject Nitro's proposal and apply plain and ordinary meaning.

## C. "a first connection block positioned at the well fracturing tree"

Nitro essentially contends this term is indefinite because it believes (incorrectly) that definiteness demands the precise "outer limits" at which a connection block stops being "positioned at" a fracturing tree. ECF No. 45 at 15. Its briefs, however, highlight that a POSITA would understand this term with reasonable certainty. Nitro concedes that a POSITA would understand this term to "[o]bviously" include "a connection block on top of or directly touching

6

the tree." ECF No. 40 at 15.[1] It also concedes that a POSITA would understand that wellheads distanced as shown in Figure 3 are not "positioned at" each other. ECF No. 45 at 13.

Nitro feigns confusion based on vague and incomplete hypotheticals about connection blocks positioned varying numbers of feet from a fracturing tree (*id.* at 15), implying the Court should resolve all potential (and hypothetical) factual disputes about the application of this otherwise simple term at the claim construction stage. But definiteness does not require absolute precision. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909–10 (2014). And even if this term might lead to good-faith factual disputes about its application in specific systems, it is not claim construction's role to resolve all potential factual disputes for the jury. *See Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, Case No. 6:11-cv-492-RWS-KNM, 2017 U.S. Dist. LEXIS 148100, at *19 (E.D. Tex. Sep. 13, 2017). The Court should thus find this term not indefinite.

**D.** **"connection block"**

Nitro now proposes that "'connection block' is 'a component that connects pipes or other elements together.'" See ECF No. 45 at 16. This is less problematic than Nitro's original proposal because it does not read in an unsupportable limitation about changing the direction of flow. But it still unnecessarily complicates a simple two-word term by making it a nine-word term and by vaguely introducing "pipes or other elements," which is unnecessary when later limitations state that "one or more pipe sections" are coupled to the connection blocks. ECF No. 1-1 at claim 9. The Court should apply plain and ordinary meaning.

**E.** **"fracturing operation"**

Nitro incorrectly suggests the Court cannot apply plain and ordinary meaning simply

---

[1] Nitro first admitted "positioned at" would "[o]bviously" include "a connection block on top of or directly touching the tree." ECF No. 40 at 15. Nitro now contends a connection block absolutely cannot be on the tree. *See* ECF No. 45 at 13-14. Nitro was right the first time.

7

because Nitro has proposed a different construction. *See* ECF No. 16 (citing *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016)). But the Federal Circuit affirmed in *Finjan, Inc. v. Secure Computing Corp.* that courts may apply the plain and ordinary meaning rather than choose a specific definition when doing so resolves the dispute. *See* 626 F.3d 1197, 1206–07 (Fed. Cir. 2010). *Eon*, by contrast, dealt with a distinct situation when applying plain and ordinary meaning did not resolve whether the term was limited in the manner a party proposed. *See* 815 F.3d at 1319.

There is no dispute between the parties here about whether the ordinary meaning of "fracturing operation" is broader than "an act of injecting fluid into a well to create man-made fractures in a hydrocarbon bearing formation." *See* ECF No. 45 at 17 (Nitro listing other parts of a fracturing operation). Applying the plain and ordinary meaning of "fracturing operation" thus settles the dispute: it is not artificially limited to "an act of injecting fluid into a well to create man-made fractures in a hydrocarbon bearing formation," as Nitro proposes.

Nitro is wrong that its construction would "clarify" the claim for the jury. It would instead complicate the claim by replacing two simple words with seventeen, including complex phrases like "man-made fractures" and "hydrocarbon bearing formation" that would require even more explanation while having no substantive relationship to the claim. POSITAs, as well as jurors in this district, understand the meaning of a fracturing operation. The Court should reject Nitro's attempt to complicate and improperly limit the term.

### F. "fracturing tree" / "fracturing trees"

Nitro says it is agreeable to Cameron's proposed compromise of "a ***tree*** having at least one valve that can control the flow of ***fracturing*** fluid during a fracturing operation." ECF No. 45 at 18 (emphasis added). Yet Nitro incorrectly concludes that this "clearly encompasses ordinary production trees." *See id.* As Cameron has explained, an ordinary production tree ***does not*** have a

valve that can control the flow of fracturing fluid during a fracturing operation. *See* ECF No. 41 at 11–14. This alternative construction properly gives meaning to the inventor's use of the specific term "fracturing tree" instead of other terms like "Christmas tree" or "production tree." The Court should thus reject Nitro's attempt to accept an alternative construction limited to fracturing, and then say, "except it is not limited to fracturing." The term "fracturing tree" was included in the claims, and not "tree," "a production tree," or "Christmas tree," because those more general terms are not the components of the invention and do not meet the inventor's intent.

### G. "fracturing manifold" / "fracturing fluid distribution manifold"

Nitro argues incorrectly that the Court should apply an atypical definition of "fracturing manifold" that does not require valves. Nitro concedes that there is no special definition of "fracturing manifold" in the specification or the claims. *See* ECF No. 45 at 19–20 (describing disclosures about these elements as limited to "preferred embodiments"). The only industry definition in the record for "fracturing manifold" defines it as "[a] system of *frac valves* that directs treatment fluid from the missile to multiple frac trees." ECF No. 41-3 (emphasis added). And none of Nitro's definitions—all of which are for the general term "manifold" (s*ee* ECF No. 40-9 at NITRO001046-051)—support its self-serving conclusion that "there is no ordinary, fixed meaning" of the more specific term "fracturing manifold." ECF No. 45 at 18.

Nitro is also wrong that Cameron has taken different positions in other proceedings. Dr. Wooley has consistently said that fracturing manifolds have valves, including during the deposition Nitro cites, when he answered "I don't see how" to Nitro's question about whether a "fracturing manifold" could be just pipes. *See* ECF No. 40-9 at 115:17–23. Likewise, the annotation of Nitro's accused system related to different claims in another patent is not inconsistent with a fracturing manifold having a valve. Nitro tried the same misdirection before the PTAB, which recognized that this annotation addressed a different term ("goat head") and could not have

9

addressed whether there was a valve in the accused fracturing manifold because the fracturing manifold in the annotation extends beyond the edges of the photograph. *See* ECF No. 40-8 at 12–13, 16. And after considering essentially the same evidence and arguments that Nitro advances here, the PTAB concluded that Nitro was wrong and decided a "fracturing manifold" requires "at least one valve." *See id.* at 17. This Court should similarly reject Nitro's proposal.

## IV. CONCLUSION

The Court therefore should find "a first connection block positioned at the well fracturing tree" not indefinite, should reject Nitro's improper limiting constructions, and should apply the plain and ordinary meaning to the terms in accord with Cameron's proposals.

DATED: October 9, 2020                    Respectfully submitted,

By: */s/ John R. Keville*
John R. Keville
Texas Bar No. 00794085
jkeville@winston.com
Merritt D. Westcott (*Pro Hac Vice*)
Texas Bar No. 24027091
mwestcott@winston.com
William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
Evan D. Lewis (*Pro Hac Vice*)
Texas Bar No. 24116670
edlewis@winston.com
WINSTON & STRAWN LLP
800 Capitol Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

ATTORNEYS FOR PLAINTIFF,
CAMERON INTERNATIONAL
CORPORATION

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. David Cabello
david@chzfirm.com
James H. Hall
james@chzfirm.com
Stephen D. Zinda
stephen@chzfirm.com
CABELLO HALL ZINDA, PLLC
801 Travis Street, Suite 1610
Houston, TX 77002

ATTORNEYS FOR DEFENDANT,
NITRO FLUIDS L.L.C.

*/s/ John R. Keville*
John R. Keville